1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| LEONARD CARTER, | NO.  C10-999-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Leonard Carter appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and that this case be dismissed with prejudice.

I.    FACTS AND PROCEDURAL HISTORY

At the time of his administrative hearing, plaintiff was a 49 year-old man with a high school degree and some college education.  Administrative Record ("AR") at 286, 288.  His past work experience includes employment as a telemarketer.  AR at 23.  Plaintiff was last

REPORT AND RECOMMENDATION - 1

gainfully employed as a telemarketer for the Seattle Times, until he was terminated from his position for reasons involving disputes with a co-worker.  AR at 293.

On September 12, 2005, plaintiff filed a claim for DIB.  On February 23, 2006, he filed an application for SSI payments, alleging an onset date of March 22, 2005.  AR at 20.  Plaintiff asserts that he is disabled due to soft tissue impairment in the lower left extremity, obesity, depressive/adjustment disorder, and schizoid personality disorder.  AR at 22.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 20. Plaintiff requested a hearing which took place on January 11, 2008.  AR at 282-314.  On May 30, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 20-29.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on May 21, 2010, AR at 5-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On June 17, 2010, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 5.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2)  there are no outstanding issues that must be resolved before a determination of disability can be made; and (3)  it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Carter bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On May 30, 2008, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.    The claimant engaged in substantial gainful activity after the alleged onset date of March 22, 2005.

3.    The claimant has the following severe impairments; soft tissue impaired in the lower left extremity, obesity, a depressive/adjustment disorder, and a schizoid personality disorder schizoid.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand and/or walk for 6 hours and has no sitting limitations.  The claimant does not need an assistive device indoors, but may need one if he walks long distances for prolonged periods of time.  He can occasionally squat, crouch, and crawl.  He may have limitations with climbing ladders and working at heights.  As to mental residual functional capacity, the claimant could not work in a team situation with others or tolerate oversight in excess of normal.

6.    The claimant is capable of performing past relevant work as a telemarketer.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.   The claimant has not been under a disability, as defined in the Social Security Act, from March 22, 2005 through the date of this decision.

AR at 22-28.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in making an adverse credibility determination?

2.   Did the ALJ err in his review of the medical evidence, and particularly that of Dr. Czysz?

3.   Should the ALJ have ordered a more fully-developed medical record?

Dkt. No. 15 at 1-2.

## VII.   DISCUSSION

### A.   The ALJ Did Not Err in Making An Adverse Credibility Assessment

In his opinion, the ALJ concluded that the plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms about which plaintiff complained, but his statements concerning the "intensity, persistence and limiting effects of these symptoms are not credible…." AR at 25.  The ALJ found credibility to be lacking because his testimony and actions were not consistent with his claims of disability, that he was previously convicted and incarcerated for a prior act of dishonesty (welfare fraud), that his symptoms were not consistent with medical evidence, that he engaged in fairly conservative medical treatment that would indicate symptoms were not as severe as alleged. AR at 25-27.  Plaintiff objects on several grounds to the findings.

#### 1.   Standards for Reviewing Adverse Credibility Determinations

Credibility determinations are particularly the province of the ALJ.  *Andrews*, 53 F.3d at 1043.  Nevertheless, when an ALJ discredits a claimant's subjective testimony, he must articulate specific and adequate reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  The determination of whether to accept a claimant's subjective symptom

1   testimony requires a two-step analysis.  20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281; SSR

2   96-7p.   First, the ALJ must determine whether there is a medically-determinable impairment

3   that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b);

4   *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an

5   underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity

6   of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v.*

7   *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  Absent affirmative evidence that the

8   claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

9   claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

10  1998)

11          When evaluating a claimant's credibility, the ALJ "must specifically identify what

12  testimony is credible and what testimony undermines the claimant's complaints." *Greger*, 464

13  F.3d at 972 (internal quotation omitted).  General findings are insufficient. *Reddick*, 157 F.3d

14  at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including the

15  claimant's reputation for truthfulness, inconsistencies in his testimony or between his

16  testimony and conduct, his daily activities, work record, and testimony from physicians and

17  third parties concerning the nature, severity, and effect of the symptoms of which the claimant

18  complains.  *Smolen*, 80 F.3d at 1284.

19                      *2.      Reasons for Mr. Carter's Termination from Seattle Times*

20          The ALJ concluded that plaintiff was terminated from the Seattle Times telemarketer

21  position based on racial tension issues, rather than performance.  The ALJ noted

22          During a consultative mental evaluation with Alan Breen, Ph.D., the claimant
23          alleged that he was let go from his job because of racial issues, not because of
            his performance.  He said that if he was not let go, he would have continued
24          working.  He further indicated that if he was able to relocate back to San
            Francisco he could get a job as a telemarketer.  He indicated that housing issues
25          prevented him from moving, not any mental or physical limitations.  Such
            statements weaken the credibility of the claimant's allegations of more limiting
26          symptoms.

AR at 25-26.  Plaintiff claims this was error because these statements by plaintiff do not pass the common sense test.  Dkt. 15 at 4-5.  Plaintiff does not argue that Dr. Breen erred in his reporting that these statements are attributable to plaintiff.  Moreover, the reported rationale for his termination as set forth in Dr. Breen's opinion (racial issues as opposed to performance issues) was repeated by the plaintiff at the administrative hearing.  AR at 293-95.

The statements by plaintiff directly contradict his testimony that he could not work with anyone.  The fact that he stopped working for reasons other than his impairments is a sufficient reason to discount his credibility.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ did not err by finding the plaintiff to be less than completely credible by reliance on his own testimony and the inconsistencies with his claimed impairment.

### *3.      Continued Work After Onset Date*

Plaintiff continued to work at the Seattle Times after his alleged onset date in March 2005.  He did so until he was terminated in February 2006, although his work was on a part time basis.  He worked a regular part-time schedule for 5 days a week for nearly a year after his alleged onset date, and the ALJ found that this indicated the plaintiff was not as limited as alleged.  AR at 26.  Plaintiff asserts that this is speculation on the part of the ALJ, reflects plaintiff' misunderstanding of the intricacies of the SSA system, and that the ALJ should have asked the plaintiff about this at his administrative hearing rather than speculate about the significance of the issue.  Dkt. 15 at 5.  The ability to maintain employment with "a fair amount of success" during an alleged period of disability demonstrates that the plaintiff's impairments did not restrict his ability to work to the point of disability.  *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).  Because he alleged he was unable to work due to his disabilities as of March 2005, but continued to do so until he was terminated in February 2006, the ALJ did not err in his conclusion that plaintiff's abilities were not as limited as he alleged.

REPORT AND RECOMMENDATION - 8

### 4.   *Felony Conviction*

Mr. Carter was convicted of welfare fraud sometime in the 1980's.  AR at 302.

Although plaintiff acknowledges that a felony conviction can be considered in determining

credibility, he asserts that the ALJ erred by not placing it in context, and that there must be a

causal connection between a crime that occurred so far in the past and the current time.  Dkt.

No. 15 at 5-6.

The weight to be accorded to any fact that bears on credibility is a judgment to be made

by the ALJ, and not this Court.  *Andrews,* 53 F.3d at 1039.  If this were the sole basis for the

adverse credibility determination, then the plaintiff's argument might have merit.  It was not,

however, the sole basis for the decision.  The ALJ did not err.

### 5.   *Dr. Wainstein Report*

In assessing plaintiff's credibility, the ALJ also referenced the consulting examination

and report dated February 13, 2006 by Luis Wainstein, M.D.  AR at 225-31.  Dr. Wainstein's

report generally indicated plaintiff could do much more than he stated, and also raised issues as

to whether a person who claimed to be as disabled as plaintiff asserted would not be using

medication stronger than over-the-counter Advil.  He found that although plaintiff claimed he

could only sit for an hour at a time, but was never comfortable when even so limited, plaintiff

sat during the interview, without moving and in the same position.  AR at 228.  He also had no

difficulties getting on or off the examination table, lying down or sitting up.  Moreover, when

he removed his shoes and socks, he did so bending over using his upper extremities.

An ALJ may rely upon a physician's observations that complaints were inconsistent

with his demonstrated abilities to support an adverse credibility determination.  *Batson v.

Comm'r of Soc. Sec.*, 359 F. 3d 1190, 1196 (9th Cir. 2004).  This is what the ALJ did.  He did

not err.

### 6.   *Secondary Gain and Conservative Treatment*

The ALJ also noted:

REPORT AND RECOMMENDATION - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> As to mental symptoms, the consultative evaluations overall do not support claimant's allegations of more limiting symptoms. Dr. Breen found the claimant to be functionally intact and gave a GAF score of 55, indicating only moderate symptoms. As discussed below, the claimant also performed well on subsequent examinations. It is noted that the evaluations in the record occurred as part of the claimant's effort to obtain secondary gain. The claimant did not engage in any mental health treatment, including no medications and no counseling since the alleged onset date.
>
> If the claimant's physical and mental symptoms were as limiting as alleged, one would expect greater effort to alleviate his conditions.

AR at 26. Plaintiff argues that the ALJ erred by finding the plaintiff less than credible merely because he was seeking Social Security benefits (e.g., "secondary gain"). If this were true, then plaintiff's assessment of error would be well-founded. *Ratto v. Sec. Dep't Health and Human Svcs.*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993). However, this was not the point of the ALJ's comments. The ALJ mentioned this to show the absence of long-standing serious conditions, and that the reasons the reports were contained in the record was not because of continuous treatment, but rather because the evaluations were ordered as part of the disability evaluation process. This was not error.

Consistent with this, the ALJ pointed out that the treatment that plaintiff was receiving was very conservative, indicating almost no treatment for his mental impairments. Conservative (or nonexistent) treatment is a legitimate basis to discount the plaintiff's testimony as to the severity of his impairment. *Parra v. Astrue*, 481 F.3d 742. 750-51 (9th Cir. 2007). Plaintiff argues that mental health issues are well-recognized for their lack of treatment, citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). While this may be true, it does not follow that the ALJ is required to ignore the principles set forth in *Parra* in all cases involving mental health issues. It is not an all or nothing proposition. The ALJ devoted a lengthy portion of his opinion on the credibility assessment, and the conservative (or nonexistent) aspect of plaintiff's mental health treatment was only on small portion of his analysis. When considered in conjunction with the other issues raised, the Court cannot

REPORT AND RECOMMENDATION - 10

conclude that the ALJ erred in his adverse credibility determination by relying, in part, on this factor.

### 7. Conclusion Regarding Credibility

As noted at the outset, credibility determinations are particularly within the province of the ALJ. Here, the ALJ carefully considered the evidence, and supported his adverse credibility decision with a detailed examination of the record. The ALJ did not err, and his credibility determination must be affirmed.

### B. The ALJ Erred/Did Not Err in His Assessment of the Medical Evidence

#### 1. Standards for Review

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

1    The opinions of examining physicians are to be given more weight than non-examining

2    physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

3    uncontradicted opinions of examining physicians may not be rejected without clear and

4    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

5    physician only by providing specific and legitimate reasons that are supported by the record.

6    *Bayliss*, 427 F.3d at 1216.

7    Opinions from non-examining medical sources are to be given less weight than treating

8    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

9    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

10   evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p,

11   1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining

12   doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion

13   may nonetheless constitute substantial evidence if it is consistent with other independent

14   evidence in the record.  *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

15                2.    *James Czysz*

16   Plaintiff claims the ALJ erred in his assessment of the medical opinions of James

17   Czysz, Psy.D., who examined plaintiff on three occasions.  The ALJ gave little weight to the

18   opinions of Dr. Czysz, in part based upon the evaluation of Dr. Alan Breen and in part on the

19   testing administered by Dr. Czysz, stating:

20           I considered Dr. Breen's medical opinion that the claimant was intact as to
21           cognitive, social, and adaptive functioning and GAF score of 55, indicating only
             moderate symptoms.  This is consistent with Dr. Breen's contemporaneous
22           examination of the claimant.  The claimant presented with logical and organized
             thinking.  Dr. Breen reported that his affect was somewhat expansive and that
23           he displayed only mildly pressured speech.  The psychologist noted that the
             claimant seemed to enjoy talking and conversation.  The claimant scored a
24           28/30 on the mini mental status exam and basic information appeared intact.  As
             an examining source, great weight is accorded to Dr. Breen's medical opinion.
25

26

REPORT AND RECOMMENDATION - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Consideration was also given to check the box forms prepared by James Czysz, Psy.D., for the Washington State's Department of Social and Health Services (DSHS). In those forms, the psychologist indicated moderate cognitive limitations as to handling simple and complex instructions and learning new tasks, as well as a severe limitation as to exercising judgment and making decisions. While the claimant may have been difficult to redirect as the psychologist noted, such limitations are inconsistent with the overall record as evidenced by the claimant's participation during the consultative evaluations discussed above. Also, on the Neurobehavioral Cognitive State Exam (COGNISTAT), the claimant scored within normal limits in all domains of functioning. Therefore, little weight is given. As to social limitations, some weight is given to the limitations as to working with others and is accounted for in the residual functional capacity determined here.

I also considered Dr. Cyzsz's (sic) 2008 statement that the claimant's increased stress since losing his job has caused "significant decompensation" and that his social skills have been "quite compromised", as well as, a low GAF score of 45. For several reasons, little weight is given to those comments and score. Although the psychologist examined the claimant on two prior occasions, he did not treat the claimant. His statements do not bear a longitudinal perspective of the claimant's conditions as a treating source. Additionally, those comments are not supported by contemporaneous testing. On the COGNISTAT, the claimant was grossly unimpaired in all measured domains of functioning. He was fully alert and oriented in all spheres. His attention span was grossly intact as measured by his ability to repeat five digits forward. His memory was in the average range as shown by his ability to recall 3 out of 4 words without cueing and to recall the 4th word with cueing. On the Trailmaking tests of Attention/Concentration, his scores were within normal limits. His performance on cognitive instruments was similar to the scores of no impairment that he received in March 2007. The psychologist noted that the difficulties with redirection may have been from a failure to establish sufficient rapport. Further, the claimant's scores on the Personality Assessment Inventory were invalid. I suspect the claimant may have exaggerated his symptoms in an effort to obtain benefits. That examination occurred post hearing, a time in which the claimant was fully aware that a disability determination may hinge on the results of his testing.

22

23

24

25

26

AR at 27-8 (record references deleted). Plaintiff claims the ALJ erred by crediting Dr. Breen's evaluation and discounting Dr. Czysz's evaluations. Both physicians are considered examining physicians. As noted above, the opinion of an examining physician may be rejected by the ALJ for specific and legitimate reasons supported by the record.

REPORT AND RECOMMENDATION - 13

Plaintiff's principal with Dr. Breen's report is that it was a one-time evaluation, that he was evaluated by Dr. Czysz three times, and the ALJ neglected to deal with Dr. Breen's statement that additional testing was needed. Dkt. No. 15 at 9. However, the number of evaluations is not dispositive, and there was additional testing – namely administration of the COGNISTAT test by Dr. Czysz, which was heavily relied upon by the ALJ. The COGNISTAT test, which measures neurobehavioral cognitive issues was administered by Dr. Czysz in March 2007, revealed that plaintiff's abilities in levels of consciousness, orientation, attention, comprehension, repetition, naming, constructions, memory, calculations, reasoning similarities and reasoning judgment were all within normal limits. AR at 240, 242.

The ALJ provided specific and legitimate reasons for discounting the opinions of Dr. Czysz. Dr. Breen's evaluation was consistent with the details in his report, and ultimately consistent with the results of the COGNISTAT test. In addition, he concluded that the ultimate opinion of Dr. Czysz was contradicted by the results of the test. Determining that a medical opinion is contradicted by the same physician's notes or observations or tests constitutes specific and legitimate reasons to discount the opinions of a physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The role of this Court is limited. As noted above, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* It is possible to interpret the medical evidence as urged by plaintiff. However, the plaintiff's interpretation is, by no means, the only rational interpretation of the medical evidence. The ALJ did not err in his evaluation of the medical evidence.

C.    The ALJ Did Not Err in His Treatment of Vocational Counselor Shiels

In November 2006, DSHS Vocational Rehabilitation Counselor submitted a letter to the SSA, stating in part "after discussion with him and reviewing available medical information,

we do not feel he is employable at this time, and the prognosis for successful employment in the future is quite guarded." AR at 155. In addition, the letter noted "…a psychiatric evaluation done in April 2006 indicates significant depression, along with interpersonal difficulties to the extent that securing and holding employment is unlikely. Based on my meeting with Mr. Carter today, it is my professional opinion that his depression and mental health challenges continue to be severe barriers to employment." *Id.*

The ALJ concluded that "Mr. Shiels stated that the claimant was not employable due to his leg condition and depression. This comment is not supported by the record as thoroughly discussed above." AR at 23. Plaintiff claims that was error, and this should have required further development of the record. The ALJ did not err. The letter from Mr. Shiels is based in large part on Dr. Czysz's 2006 evaluation. As noted above, the ALJ did not err in discounting Dr. Czysz's report and evaluation. In addition, Mr. Shiels' letter also referred to physical difficulties faced by plaintiff as an indication of his alleged disability. However, no error has been assigned to the ALJ's determination that plaintiff did not suffer from physical impairments that would render him disabled.

D.   The ALJ Did Not Fail To Develop the Record

The plaintiff also argues that the ALJ should have ordered further tests to develop the record. When the record is ambiguous, equivocal, or inadequate, the ALJ has a duty to assist in developing the medical record. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). This can be especially true in cases involving mental impairments. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

Plaintiff argues that in light of Dr. Breen's 2006 report recommending further testing, the ALJ should have ordered additional medical review to develop the medical record. However, this ignores the impact of the later administered COGNISTAT test. In addition, the ALJ gave serious consideration as to whether additional testing was necessary. Ultimately, he

1   concluded it was not.  AR 309-11.  There is no basis to conclude that the ALJ erred in making

2   the decision that the record was appropriately developed.

3                                    VIII.    CONCLUSION

4          For the foregoing reasons, the Court recommends that Commissioner's decision be

5   AFFIRMED and that this case be dismissed with prejudice.  A proposed order accompanies

6   this Report and Recommendation.

7          DATED this 7th day of December, 2010.

8                                         *James P. Donohue*

9                                         _____

10                                        JAMES P. DONOHUE
                                          United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 16